UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD VINCENT RAY, JR., | No. 1:22-cv-01504-ADA-CDB (PC) |
| Plaintiff, | ORDER ADOPTING FINDINGS AND RECOMMENDATIONS, DENYING PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*, AND ORDERING PAYMENT OF FILING FEE |
| v. | |
| BRIAN CATES, et al., | |
| Defendants. | (ECF Nos. 2, 8) |
| | **FORTY-FIVE (45) DAY DEADLINE** |

Plaintiff Edward Vincent Ray, Jr., ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed under 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.   FINDINGS AND RECOMMENDATIONS AND OBJECTIONS**

On March 9, 2023, the assigned Magistrate Judge issued findings and recommendations to deny Plaintiff's motion to proceed *in forma pauperis* ("IFP") and require Plaintiff to pay the filing fee. (ECF Nos. 2, 8.) The Court found that Plaintiff had at least three "strikes" prior to filing this action under 28 U.S.C. § 1915(g) and did not qualify for the imminent danger exception. (ECF No. 8.) In determining that Plaintiff failed to demonstrate imminent danger, the Magistrate Judge reasoned:

///

> While Plaintiff has suffered some physical injuries in the past, he has not alleged the attacks were committed by known GP inmates, committed because he was an SNY inmate, or the result of NDPF integration of inmates. The allegations of violence are vague and do not specify when the attacks occurred. Moreover, Plaintiff waited two years to file this action after being moved to the NDPF with the violent GP gangs. Even accepting Plaintiff's allegations are true, the Court finds that Plaintiff has failed to demonstrate he was in imminent danger at the time he filed this action.

(*Id.* at 6.)[1]

Plaintiff filed timely objections to the findings and recommendations. (ECF No. 9.) Plaintiff denies having three strikes and alleges that the courts are not adhering to federal laws governing "imminent danger" standards to justify repeated denials of Plaintiff's applications for IFP. (*Id.* at 1–2.) He argues that the Magistrate Judge set "the 'pleading bar' [too] high as to this Plaintiff" because he is a "frequent filer" and "any issues he files are automatically frivolous. NOT SO." (*Id.* at 2.) Contrary to this assertion, the Magistrate Judge applied the correct standard: "Because Plaintiff is *pro se*, in making the imminent danger determination the Court must liberally construe Plaintiff's allegations." (ECF No. 8 at 3) (citing *Andrews v. Cervantes*, 493 F.3d 1047, 1052 (9th Cir. 2007)).

Plaintiff has not identified which cases he believes were improperly counted as "strikes." The Court has reviewed the dismissal orders in each of Plaintiff's cases referenced in the findings and recommendations, and the cases were dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).

**II.   DISCUSSION**

    **A. Contaminated Water**

None of the cases concerning allegations of contaminated water cited by Plaintiff are relevant to the three strikes bar or the imminent danger exception, precluding this Court from granting Plaintiff's motion to proceed IFP. In his objections, Plaintiff argues that each of his claims are plausible and "were already found to be an exception to the 3 strike prefiling bar." (ECF No. 9 at 2.) With respect to his

---

[1] General Population is abbreviated as "GP," Sensitive Needs Yard as "SNY," and Non-Designated Programming Facility as "NDPF."

contaminated water claim, he cites to three cases for the proposition that the "drinking water was polluted" was not a frivolous claim:  *See Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989) ("*Jackson*"); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) ("*Duckworth*"); *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

*Jackson* has been superseded by the Prison Litigation Reform Act of 1995 ("PLRA"), and the PLRA employs the three-strikes bar and the imminent danger exception.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("Section 1915(e)(2)(B)(ii), even under our reading, allows a district court to dismiss, sua sponte and prior to service of process, a complaint that fails to state a claim, a power courts did not have prior to enactment of the PLRA.") (citing *Jackson*, 885 F.2d at 640).  The Ninth Circuit's determined that allegations of unsanitary food handling and polluted water stated a claim under the Eighth Amendment, but did not concern imminent danger. *Jackson*, 885 F.2d at 639.

In *Duckworth*, the plaintiff complained of "subhuman conditions," including multiple, specific, examples of inhumane conditions.  The plaintiff alleged that he was "forced to live with 'filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, poor lighting, inadequate heating, unfit water to drink, dirty and unclean bedding, without toilet paper, rusted out toilets, broken windows, [and] ..."drinking water contain[ing] small black worms which would eventually turn into small black flies."  *Duckworth*, 955 F.2d at 22.  This allegation, among many others, raised "triable issues concerning . . . the ghastliness of the conditions" that precluded summary judgment.  *Id.*  However, *Duckworth* did not address the three-strike bar and does not hold that inhumane-like conditions, such as contaminated water, constitute an "imminent danger" under the PLRA.  *See generally*, *Duckworth*, 955 F2d 21.

In *Helling*, the United States Supreme Court held that a prisoner's Eighth Amendment claim could be based on future harm to health arising out of exposure to environmental tobacco smoke. The Supreme Court stated, "[w]e would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery."  *Helling*, 509 U.S. at 33.

While Plaintiff correctly relies on *Helling* to suggest that unsafe drinking water can violate

a prisoner's Eighth Amendment rights without waiting for physical signs of contamination, the allegations fall short of demonstrating that Plaintiff received unsafe drinking water at the California Correctional Institute ("CCI"). In his complaint, Plaintiff asserts only that it is "common knowledge" that CCI was built at a time when people were not aware of the dangers of using lead pipes and no amount of lead or other contaminants are now acceptable. (ECF No. 1 at 4; *see also* ECF No. 9 at 5.) He states that CCI employees carry bottled water every day "for their own protection." (ECF No. 1 at 4; *see also* ECF No. 9 at 5.) Though Plaintiff claims that he has suffered various ailments, his allegations merely speculate that the water at CCI is contaminated and do not indicate that Plaintiff received "demonstrably unsafe drink water," unlike the specific allegations in *Helling* and *Duckworth*. The Court agrees with the findings and recommendations of the assigned Magistrate Judge that these claims fail to provide a "factual basis for [Plaintiff's] conclusory allegation of imminent danger based on contaminated water." (ECF No. 9 at 5.) Furthermore, none of the cases shed light on the three-strikes rule or the imminent danger exception. Accordingly, Plaintiffs speculative claims of contaminated water at CCI do not present an imminent danger to Plaintiff's health and safety.

**B.    Housing**

Second, Plaintiff argues that the Magistrate Judge abused his discretion in finding that Plaintiff's housing with known enemies did not present imminent danger. Plaintiff again states: "In the California Prison System, it is common knowledge that General Population (GP) inmates **CANNOT** be housed with Sensitive Needs [Yard] (SNY) inmates, due to excessive violence by GP inmates." (ECF No. 9 at 3) (emphasis in original). Plaintiff cites to three cases that are factually distinguishable from the instant case.

In *Ashley v. Dilworth*, the Eighth Circuit reversed the district court's denial of IFP status and held that the inmate sufficiently alleged imminent danger of serious physical injury. 147 F.3d 715, 717 (8th Cir. 1998). The plaintiff was placed near an inmate on his enemy list and was attacked by this enemy with a sharpened, nine-inch screwdriver. Even though the plaintiff notified the defendants that he was placed near listed enemies, the plaintiff was attacked by this enemy with a butcher knife. *Id.* The Eighth Circuit reasoned that the plaintiff had properly alleged an ongoing

4

danger, and the complaint was filed very shortly after the last attack. The Eighth Circuit panel reversed the district court and mandated that the plaintiff be allowed to file his complaint without prepaying the filing fee. *Id.*

In contrast, Plaintiff asserts only general allegations that the integration of GP inmates and SNY inmates, factions who are "mortal enemies," placed him in imminent danger. The GP inmates are violent gang members who engage in illegal activity and run the facility, whereas Plaintiff was an SNY inmate, who was labeled, threatened, targeted, and subject to violence at the hands of GP inmates. Although Plaintiff alleges the GP inmates were "known enemies," unlike the plaintiff in *Ashley*, Plaintiff did not have a name or list of names identified as his enemies with whom he could not be housed safely, and he waited for two years to bring this action.

In *Berg v. Kincheloe*, the only issue before the Ninth Circuit was whether summary judgment was appropriately granted. 794 F.2d 457, 459–62 (9th Cir. 1986). The third case cited by Plaintiff, *Hearns v. Terhune*, 413 F.3d 1036 (9th Cir. 2005), was on appeal from a Rule 12(b)(6) dismissal by the district court. *Id.* at 1040–42. Given the different procedural postures of these two cases cited, they are not instructive as to whether Plaintiff's allegations indicate imminent danger for IFP purposes.

Lastly, Plaintiff urges the Court to reject or refuse to adopt the findings and recommendations and "grant Plaintiff IFP status as the issues in the § 1983 complaint are **non-frivolous** and cognizable constitutional claims, that, by law, must be allowed to proceed with a jury." (ECF No. 9 at 8) (alteration in original). By recommending that the Court allow Plaintiff's complaint to proceed upon prepayment of the filing fee instead of recommending dismissal, the Magistrate Judge has implicitly determined that the case should not be dismissed as frivolous or for failure to state a claim before proceeding to screening. Upon consideration of Plaintiff's arguments and cases cited, the Court finds that / the findings and recommendations were not clearly erroneous or contrary to law. Therefore, the objections are overruled. As Plaintiff was advised previously, he may still pursue his claims if he prepays the filing fees.

**C.     Legal Standards**

In the remainder of his objections, Plaintiff provides several pages of legal standards with

citations. These include the well-accepted standards for deliberate indifference under the Eighth Amendment, qualified immunity, *stare decisis*, and construction of *pro se* complaints. While the Court will certainly follow these legal standards when addressing the merits of Plaintiff's claims, none demonstrates that the imminent danger exception applies to overcome the three-strikes bar and permit Plaintiff to proceed IFP.

### III.   CONCLUSION

In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(c), this Court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, the Court finds that the findings and recommendations are supported by the record and proper analysis.

Accordingly,

1. The findings and recommendations issued on March 9, 2023, (ECF No. 8), are ADOPTED in full;

2. Within **forty-five (45) days** after the date of service of this order, Plaintiff shall pay the $402.00 filing fee in full if he wishes to proceed with this action; and

3. Plaintiff's failure to comply with this order **shall** result in dismissal of this action without further notice.

IT IS SO ORDERED.

Dated:   October 10, 2023

UNITED STATES DISTRICT JUDGE